# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BRUCE COLDIRON,
Plaintiff

vs

Case No. 1:08-cv-388
(Weber, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), and the Commissioner's response in opposition. (Doc. 8).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1954 and was 48 years old on his alleged onset date of disability and 52 years old at the time of the ALJ hearing. Plaintiff has a twelfth grade education and past work experience as an emboss operator, machine operator, factory worker, CDL driver, and pizza deliverer. Plaintiff filed an application for DIB in January 2004, alleging an onset of disability of August 1, 2003, due to obesity, bilateral shoulder AC join arthritis and history of rotator cuff repair, knee problems, diabetes, lung disease, obstructive sleep apnea, heart failure, degenerative

lumbar disc disease, and depression. Plaintiff's application was denied initially and upon reconsideration. Plaintiff then requested and was granted a de novo hearing before an administrative law judge (ALJ). Plaintiff, who was represented by counsel, appeared at a hearing before ALJ Larry Temin at which a Vocational Expert (VE) appeared and testified.

On November 13, 2006, the ALJ issued a decision granting in part and denying in part plaintiff's DIB application. The ALJ determined that plaintiff suffers from severe impairments of obesity, diabetes, mild restrictive lung defect, obstructive sleep apnea, right-sided heart failure, degenerative lumbar disc disease (status post surgery in December 1994), bilateral shoulder AC joint arthritis and history of rotator cuff tear (status post surgeries in August 2003 and March 2004), bilateral knee osteoarthritis (status post right knee surgery in December 2005), and depression, but that such impairments do not individually or in combination meet or equal the Listing of Impairments. (Tr. 28). According to the ALJ, plaintiff retains the residual functional capacity (RFC) for a range of sedentary work: due to his combined physical impairments, he can lift/carry and push/pull up to 10 pounds occasionally and 5 pounds frequently; he can stand and/or walk a total of 2 hours (15 minutes at a time, then he must be able to sit for 2-3 minutes) and sit a total of 8 hours (one hour at a time, then he must be able to stand for 2-3 minutes); no kneeling, crouching, crawling, climbing ladders, ropes and scaffolds, or working in unprotected heights; only occasional stooping, climbing ramps and stairs or reaching above shoulder level with either upper extremity; and no concentrated exposure to fumes, noxious odors, dust and gases. The ALJ found that plaintiff is unable to remember or carry out detailed instructions as a result of his depression. (Tr. 26-27). The ALJ determined that plaintiff's testimony was partially credible, but not to the extent of showing disabling pain or an inability to sustain even sedentary

work. (Tr. 28). The ALJ determined that plaintiff could not perform his past relevant work, but based on the vocational expert's testimony, could perform other jobs that exist in significant numbers in the national economy prior to turning age 50. As of November 11, 2004, the day before his 50th birthday, plaintiff was considered to be a person "closely approaching advanced age" and "disabled" based on the grid for sedentary work. (Tr. 29). Consequently, the ALJ concluded that plaintiff is not disabled under the Act from his alleged onset date until November 11, 2004, but entitled to disability benefits as of November 11, 2004. The Appeals Council denied plaintiff's request for review of the ALJ's finding of nondisability prior to November 11, 2004, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as

defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461

U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742

F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a

whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award

benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

### OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 7 at 2-5; Doc. 8 at 2-8) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff challenges the denial of disability benefits for the period prior to November 11, 2004. Plaintiff contends the ALJ erred in determining his residual functional capacity and failed to give appropriate weight to the opinions of both treating and examining doctors. Plaintiff also argues the ALJ failed to consider the effect of plaintiff's obesity on his ability to work. Finally, plaintiff contends the ALJ failed to make a proper credibility finding. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

The ALJ determined that plaintiff has the residual functional capacity to perform a reduced range of sedentary work. This includes sitting for a total of eight hours per day, for one hour at a time, at which point plaintiff would need to stand or walk for two to three minutes; standing and walking for a total of two hours per day, for fifteen minutes at one time, then he must be able to sit for two to three minutes; and lifting and carrying, and pushing and pulling up to 10 pounds occasionally and 5 pounds frequently, among other limitations.

Plaintiff contends the ALJ failed to give proper weight to the opinions of Drs. Evans, Bailey, Minnie, and Murtaugh, and instead erroneously relied on the opinions of the non-examining state agency physicians in determining plaintiff's RFC.

Dr. Evans, a specialist in occupational health, examined plaintiff on January 16, 2004 and opined that plaintiff could walk 1/4 mile before experiencing low back pain and fatigue, stand constantly for 10 minutes, and sit for up to one hour. (Tr. 286). Dr. Evans opined that plaintiff could not lift more than five pounds occasionally. (Tr. 286). Dr. Evans believed that plaintiff was unemployable due to the combined effects of his impairments. (Tr. 286).

The ALJ gave Dr. Evans' report reduced weight due to its inconsistencies with the other evidence of record and because Dr. Evans was not a treating source. (Tr. 25). The ALJ noted that while Dr. Evans opined plaintiff was limited to standing only ten minutes without interruption and sitting for one hour, he did not specify the total number of hours plaintiff could stand, sit, and walk in an eight hour workday. (Tr. 25, 286). The ALJ also contrasted Dr. Evans' January 2004 lifting limitation of five pounds with that of plaintiff's treating surgeon, Dr. Zancan, who opined that following plaintiff's shoulder surgery in August 2003 he could return to work in December 2003 (at his pizza delivery job which required lifting of twenty to thirty pounds) with no restrictions. (Tr. 25, 281).

Plaintiff argues that Dr. Zancan's return to work opinion was limited to plaintiff's shoulder injury and should not have been used by the ALJ to discount Dr. Evans' entire opinion. Plaintiff points out that Dr. Evans' report post-dated that of Dr. Zancan's and was written after plaintiff's failed December 2003 work attempt. Plaintiff notes he continued to have chronic shoulder pain for which he had another surgery (on his other shoulder) in March 2004. He also

9

points to physical therapy notes in May 2004 that he was "quite behind" in his rehabilitation protocol with "very poor scapulohumeral mechanics and decreased strength as well as limited motion." (Tr. 370).

To the extent plaintiff contends the ALJ erred by not deferring to the RFC opinion of Dr. Evans, plaintiff's assignment of error is not well-taken. As the ALJ noted, Dr. Evans was not a treating physician, but examined plaintiff on only one occasion. His opinion, therefore, was not entitled to any special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The ALJ could have reasonably viewed Dr. Evans' lifting restriction of less than five pounds as inconsistent with that of the treating surgeon, Dr. Zancan, who opined plaintiff could return to work in December 2003 with no lifting restrictions. (Tr. 280-81, 286). In any event, the ALJ ultimately determined that plaintiff was limited to much less than the twenty to thirty pounds required by his relevant employment in December 2003, opining that plaintiff was limited to lifting ten pounds occasionally and five pounds frequently.

Nor did the ALJ use Dr. Zancan's opinion as a reason to discount Dr. Evans' entire opinion. The other RFC limitations imposed by the ALJ were similar to those imposed by Dr. Evans. For example, Dr. Evans opined that plaintiff could not stand for longer than 10 minutes at a time, whereas the ALJ found that plaintiff could stand and/or walk for only 15 minutes at a time (Tr. 286, *compare* Tr. 27). Likewise, both Dr. Evans and the ALJ agreed that plaintiff could sit for only one hour at a time. *Id.* The ALJ simply went further, as he is required to do, and made findings regarding the length of time plaintiff could perform these functions in an eight-hour day. The ALJ's decision in this regard is substantially supported in the record.

Plaintiff also takes issue with the ALJ's failure to fully credit the opinion of Dr. Bailey, a

10

consultative examiner for the Social Security Administration, who examined plaintiff on May 4, 2004. (Tr. 347-350). Based on her examination, Dr. Bailey opined that plaintiff "appears incapable of performing even a mild amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects at this time." (Tr. 350). Dr. Bailey also opined that plaintiff "would have difficulty reaching, grasping, and handling objects with his left upper extremity." (Tr. 350).

The ALJ gave reduced weight to Dr. Bailey's opinion because Dr. Bailey never explained what she meant by "mild" and her examination of plaintiff occurred shortly after his left shoulder surgery in March 2004. (Tr. 25). Plaintiff argues the ALJ was without any basis to reject Dr. Bailey's use of the term "mild" and contends the clear inference from Dr. Bailey's statement is that plaintiff was incapable of any activities commensurate with sustained work. (Doc. 11). Plaintiff also contends that any limitations from plaintiff's March 2004 shoulder surgery would not impact Dr. Bailey's opinion on plaintiff's inability to sit, stand, and walk for prolonged periods. Finally, plaintiff points out that Dr. Bailey's opinion is consistent with that of Dr. Minnie, plaintiff's podiatrist, who opined in October 2004 that plaintiff was incapable of prolonged standing or walking. (Tr. 374).

It is not clear what Dr. Bailey meant by her statement that plaintiff "appears incapable of performing even a mild amount of sitting, ambulating, standing, . . . ." (Tr. 350). She may have meant, as plaintiff argues, that plaintiff was unable to sit, stand, or walk for even a short amount of time. Yet this opinion of an inability to sit, stand, or walk for even short periods conflicts with other evidence in the record showing that plaintiff was able to sit for one hour at a time (Dr. Evans) and for six hours in an eight hour day (Drs. Klylop and Norris), and to stand for six hours

11

in an eight hour day (Drs. Klylop and Norris). In view of Dr. Bailey's ambiguous statement and the conflicting evidence in the record, the ALJ was free to discredit Dr. Bailey's opinion on plaintiff's functional capacity because it is the Commissioner's function to resolve conflicts in the medical evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Since the ALJ's determination in this regard is supported by substantial evidence, his decision must stand regardless of whether this Court would resolve the conflict differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

To the extent Dr. Minnie reported that plaintiff was incapable of prolonged standing or walking (Tr. 374), the ALJ accommodated this restriction by limiting plaintiff to standing and/or walking for no more than 15 minutes at one time and for no more than two hours in an eight hour workday. Dr. Minnie did not quantify the amount of walking or standing to which plaintiff was limited. Therefore, the ALJ did not "reject" Dr. Minnie's opinion as plaintiff argues. (Doc. 7 at 11).

Plaintiff also contends the ALJ improperly rejected the March 2005 opinion of Dr. Murtaugh, plaintiff's treating cardiologist, who opined that plaintiff was unable to lift any weight and was limited to sitting for 10 minutes at one time for up to twenty minutes in an eight hour workday. (Tr. 424-25). Dr. Murtaugh also reported that plaintiff's ability to sit was affected by his obesity, without quantifying any particular limitations on sitting. (Tr. 425). Plaintiff contends he began treatment with Dr. Murtaugh in May 2004, six months prior to the ALJ's onset date of disability, and therefore Dr. Murtaugh's opinion is relevant to his claim for disability benefits prior to November 2004. Plaintiff also contends the ALJ failed to adequately explain his reasons

for rejecting Dr. Murtaugh's assessment. (Doc. 7 at 11). The Court disagrees.

The ALJ articulated good reasons for not crediting the opinion of Dr. Murtaugh. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004). The ALJ acknowledged that plaintiff began seeing Dr. Murtaugh in May of 2004 for right heart failure, but noted that Dr. Murtaugh's assessment of plaintiff's functional capacity was based primarily on symptoms of obesity and was internally inconsistent:

> [I]n an April 2005 letter . . . he indicates 'we are not seeing much in the way of cardiac dysfunction' adding that the claimant 'has good left ventricular function, a negative nuclear study, and actually no dilation of his right ventricle' (Exhibit 33F/13). Overall, the limitations Dr. Murtaugh gives are too inconsistent and unclear to be helpful. For example, he indicates that sitting is affected [by obesity, as opposed to the cardiac impairment], but gives no quantitative limitation (Exhibit 30F/3). He also estimates the claimant can stand and walk ten minutes without interruption, but then states he can stand and walk a total of only one-third hour (i.e., 20 minutes) in an entire eight-hour day (Exhibit 30F/3).

(Tr. 26). The ALJ properly considered that the impairment for which plaintiff was treated by Dr. Murtaugh, namely his cardiac impairment, was not the impairment upon which his functional capacity assessment was based. (Tr. 26). *See* 20 C.F.R. § 404.1527(d)(2)(ii). Given the normal cardiac findings noted by Dr. Murtaugh (Tr. 462), the internal inconsistencies of his RFC report, and the conflicting opinions of the physicians of record, the ALJ reasonably declined to give significant weight to Dr. Murtaugh's opinion.[1]

In this case, the ALJ was faced with several conflicting physicians' opinions, none of which were completely consistent with one another in terms of plaintiff's functioning. Contrary to plaintiff's contention, the ALJ did not adopt the RFC opinions of the state agency doctors,

---

[1] To be afforded controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *See Walters*, 127 F.3d at 530; 20 C.F.R. § 404.1527(d)(2).

13

who opined plaintiff was capable of light work, but specifically noted that the evidence of record which post-dated these doctors' opinions indicated a further restriction of plaintiff's functioning than reflected in those reports. (Tr. 26). The ALJ reasonably considered all of the medical evidence of record and, rather than rely on any one assessment of plaintiff's functioning, designed an RFC which comported with the record as a whole. Plaintiff has failed to show any reversible error in the ALJ's RFC finding. The ALJ's RFC decision is supported by substantial evidence and should be affirmed.

Plaintiff also contends the ALJ failed to consider the effects of plaintiff's obesity on his ability to work in violation of Social Security Ruling 02-1p. That Ruling provides that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. Adjudicators must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id.* Plaintiff cites to the opinions of Drs. Murtaugh and Bailey, who noted that plaintiff's RFC was affected by his obesity. (Tr. 350, 425). Plaintiff also lists the numerous impairments for which he has been treated between his alleged onset date and the date the ALJ found plaintiff disabled, nearly all of which are obesity related. (Doc. 7 at 12-13).

While plaintiff contends the ALJ failed "to incorporate all of the obvious limitations as a result of plaintiff's obesity in his RFC" (Doc. 7 at 13), plaintiff does not state what additional limitations the ALJ should have imposed as a result of plaintiff's obesity. The limitations assessed by Drs. Murtaugh and Bailey have already been discussed above, and the ALJ reasonably declined to give special deference to either opinion. Contrary to plaintiff's argument,

the ALJ did not ignore plaintiff's obesity impairment. The ALJ specifically determined that plaintiff's obesity was a "severe" impairment. (Tr. 22). Throughout his decision, the ALJ considered the impact of plaintiff's obesity in relation to his other impairments. For example, the ALJ noted that plaintiff is morbidly obese, weighing 403 pounds at 5 foot, 11 inches tall. (Tr. 22). The ALJ reviewed the medical records showing plaintiff's weight has generally been over 350 pounds and found that obesity "is also a factor in other medical conditions" including Type 2 diabetes, mild restrictive lung defect, obstructive sleep apnea, and musculoskeletal symptoms. (Tr. 22-23). The ALJ also noted that Dr. Murtaugh attributed plaintiff's physical limitations to obesity (Tr. 26), but rejected that opinion for the reasons outlined above. The ALJ also considered that plaintiff did not experience radiculopathy in his lower back despite his obesity, that he had normal motor strength in his lower extremities and no sensory deficits, and was able to successfully participate in physical therapy and an exercise program at the YMCA using the pool and treadmill. (Tr. 26). The ALJ did not fail to consider plaintiff's obesity on his ability to perform a range of sedentary work activity.

To the extent plaintiff also contends the ALJ erred in finding his testimony not credible, plaintiff's contention is without merit. Plaintiff contends his subjective complaints are supported by the opinions of Drs. Bailey, Evans, and Murtaugh. (Doc. 7 at 13). However, as explained above, the ALJ's reasons for discounting the opinions of these doctors is substantially supported by the record in this case. Nor does plaintiff explain what aspects of his testimony are consistent with any of the physicians' opinions.

In addition, the ALJ gave several reasons for his finding that plaintiff was only partially credible. The ALJ noted that despite plaintiff's testimony that he was able to sit for only 15 to 20

15

minutes, he sat throughout the one-hour hearing. (Tr. 26). The ALJ further noted that despite reporting pain all over his body, with the worst pain in his back, a pain management specialist reported negative straight leg raising, normal motor strength and no sensory deficits, and evidence of "symptom magnification." (Tr. 26, 515). The pain management specialist did not recommend opiods for pain management, but rather physical therapy which resulted in greater mobility. (Tr. 26, 515, 480). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. The ALJ properly discounted plaintiff's credibility in view of the inconsistencies cited by the ALJ in his decision, plaintiff's testimony, and the other evidence indicating that plaintiff was not as limited as his testimony suggested. *See Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 392 (6th Cir. 2004). The ALJ's credibility determination is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 2/17/09

Timothy S. Hogan
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BRUCE COLDIRON,
    Plaintiff

vs                                       Case No. 1:08-cv-388
                                                 (Weber, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

**NOTICE TO PARTIES REGARDING FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

17